# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 46794-1-II |
| RICHARD LEE MURSCH,<br>                    Respondent, | |
| and | |
| AERAN HAN MURSCH, | UNPUBLISHED OPINION |
|                    Appellant. | |

WORSWICK, P.J. — Aeran Mursch appeals the superior court's denial of her motion to vacate a default decree of legal separation. She argues that the superior court erred by denying her motion to vacate the order because (1) her ex-husband, Richard Mursch, fraudulently prevented her from contesting the separation, and (2) extraordinary circumstances existed, permitting the court to vacate the order. She also argues that (3) Richard's[1] behavior deprived her of due process. We disagree and affirm the order denying the motion to vacate.

## FACTS

Aeran was born and raised in Korea. She came to the United States as an adult and married Richard. The couple married in 1992 and had two children.

Richard petitioned for a legal separation on July 12, 2011. Aeran was served with a summons informing her that Richard had filed for a legal separation. Aeran also received a

---

[1] We refer to Richard Mursch and Aeran Mursch by their first names. We intend no disrespect.

proposed order of legal separation. The summons informed Aeran to respond within 20 days to avoid a default order. Aeran did not respond, nor did she take any action.

On August 12, the superior court entered default orders of legal separation, child support, and a final parenting plan. The child support order obligated Richard to pay $1,800 per month. Although Aeran's name appears at the bottom of the child support order, apparently requesting the enforcement services of the Division of Child Support (DCS) to assist with the payment of child support, Aeran was not present at the hearing. Instead, Richard's attorney signed this order, appearing to make the request as Aeran's attorney. Aeran's signature appears on a form authorizing DCS to deposit the child support payments directly into the couple's joint bank account.[2]

The decree of legal separation obligated Richard to pay Aeran $700 in spousal maintenance per month for four years. It awarded the family home to Aeran, subject to the remaining amount owing on the mortgage.

Nearly two years later, on May 17, 2013, Richard moved to convert the decree of legal separation into a decree of dissolution. Aeran, who was then represented by counsel, objected on June 7. She argued that Richard had been paying child support payments to DCS, and she had not received any of the child support payments. The superior court granted Richard's motion, thereby dissolving the marriage on June 11.[3]

---

[2] The parties agree Aeran's signature appears on the form, but the authorization form is not in the record on appeal.

[3] The superior court noted that a motion to convert a separation into a dissolution was an inappropriate setting to bring up the child support issue.

By December, Aeran retained different counsel. On February 27, 2014, Aeran moved to vacate the decree of legal separation because she "did not receive notice of the hearing on [Richard's] motion for default that was scheduled 30 days after personal service was completed." Clerk's Papers (CP) at 144. She alleged for the first time that Richard had misrepresented the consequences of the legal separation to her, causing her to fail to appear to contest the separation.

The superior court set a hearing to resolve the factual allegations. Before that hearing, Richard's attorney provided a declaration explaining why he had signed for Aeran on the child support order. He declared that this was merely a scrivener's error, which he had offered to correct shortly after learning he had made the mistake.

The superior court took Aeran's and Richard's testimony. Aeran acknowledged that she received the summons and petition for legal separation, as well as proposed final orders. She testified that she read and disagreed with the separation document, but Richard did not give her money to hire a lawyer and he forbade her from using the joint account money. She testified that she believed she had to go to court to contest the separation, but immediately thereafter she said: "I didn't know I had to be in court." Verbatim Report of Proceedings (VRP) at 27. She testified that Richard told her the legal separation was "completed." VRP at 28. She never received the final default judgment of legal separation, and she believed the separation was not in effect because she had not signed it. Richard continued to live in the family home and control the finances. Aeran testified that she did not sign the direct deposit form authorizing DCS to deposit funds into a joint bank account. She further testified that Richard paid her $1,100 per month, rather than $1,800 as required by the order of child support.

3

Richard's version of these events was different. He testified that Aeran had full access to the couple's joint bank account until March 2012, when he removed her from the account. He testified that although Aeran was uncooperative with his attempts to set up the direct deposit system, she eventually signed the form authorizing direct deposit into the joint account. Richard paid Aeran $1,100 per month to discharge his obligation to pay her $700 per month in maintenance, plus more. Thus, his testimony suggested that the $1,100 Aeran received every month represented spousal maintenance plus extra money, and the child support was paid separately through DCS. Richard paid the mortgage, although Aeran had the obligation to pay the mortgage under the orders. Richard testified that he never misrepresented the nature of the separation to Aeran.

After considering this testimony, the superior court considered CR 60(b)(4)[4] and (11).[5] The court found that Aeran had not shown excusable neglect when she failed to respond to the summons and when she waited nine months to move to vacate the separation. It found that Richard's attorney's inadvertent signature "for" Aeran on the child support order was immaterial and did not prejudice Aeran. CP at 213. The superior court noted that it was odd that Richard paid the child support into a joint account to which he had access. But despite this odd arrangement, the superior court noted that Richard had paid more than he owed under the orders: he paid the mortgage, although Aeran owned the house under the separation decree, and Richard

---

[4] CR 60(b)(4) provides that the superior court may vacate a final order on the basis of fraud, misrepresentation, or misconduct of the adverse party, so long as this motion is brought within reasonable time.

[5] CR 60(b)(11) provides that the superior court may vacate a final order on the basis of "[a]ny other reason justifying relief," so long as this motion is brought within reasonable time.

paid Aeran more than he owed her each month. The superior court concluded that, even though the parties' testimony differed, Aeran had not proved fraud, misrepresentation, or misconduct.

Turning to CR 60(b)(11), the superior court noted that the distribution of property was not substantially unequal. The court concluded that although the property could have been distributed differently, it was not convinced that there were grounds to vacate the order. The court noted that Aeran had received notice of all the important documents, and that Richard had no obligation to provide her with final orders. The superior court found that Richard's version of events was plausible, and therefore it could not find that Aeran had proved fraud or misrepresentation. Aeran appeals.

ANALYSIS

I. DENIAL OF MOTION TO VACATE SEPARATION DECREE

Aeran argues that the superior court erred by denying her motion to vacate the default decree of legal separation. We disagree.

A.    *Standard of Review*

We review a superior court's decision on a motion to vacate a default judgment for an abuse of discretion. *Morin v. Burris*, 160 Wn.2d 745, 753, 161 P.3d 956 (2007). A superior court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. *Morin*, 160 Wn.2d at 753. Our review is limited to the decision on the motion, not the underlying judgment. *Bjurstrom v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980).

B.    *CR 60(b)(4): Fraud, Misrepresentation, or Misconduct*

Aeran first argues that the superior court erred by denying her motion to vacate the default order under CR 60(b)(4). We disagree.

Under CR 60(b)(4), the superior court may vacate a judgment due to fraud, misrepresentation, or other misconduct of an adverse party. A party seeking relief under CR 60(b)(4) must establish fraud, misrepresentation, or misconduct by clear and convincing evidence.[6] *Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). Clear and convincing evidence is that which shows the ultimate fact at issue to be highly probable. *Dalton v. State*, 130 Wn. App. 653, 666, 124 P.3d 305 (2005). The fraud must cause the entry of the judgment the party seeks to vacate. *Lindgren*, 58 Wn. App. at 596.

Here, the trial court did not abuse its discretion by finding that Aeran had not proved Richard's fraud, misrepresentation, or misconduct. As the superior court acknowledged below, Richard and Aeran each testified to different, but plausible, versions of the events that led Aeran not to contest the decree of legal separation. Moreover, Richard properly served Aeran with the summons, which explained that a default judgment was possible if Aeran failed to respond. The superior court acknowledged that Richard ultimately paid Aeran more than the separation decree and order of child support required.

The court found plausible Richard's testimony that Aeran was not cooperative with his attempts to help her set up the direct deposit system. The superior court acknowledged that while both parties' stories could not be true, there was insufficient evidence that Richard committed fraud, misrepresentation, or misconduct. Finally, the superior court considered the

---

[6] To establish fraud or intentional misrepresentation, Aeran had to prove (1) Richard represented an existing fact, (2) its materiality, (3) its falsity, (4) Richard's knowledge of its falsity, (5) Richard's intent that Aeran act upon the misrepresentation, (6) Aeran's ignorance of the falsity of the misrepresentation, (7) Aeran's reliance on the truth of the representation, (8) Aeran's right to rely upon it, and (9) consequent damage. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965 (2012).

allegation that Richard had defrauded Aeran when his attorney signed for her on the order requesting child support. The superior court noted that the result of this error was merely that DCS provided enforcement support, and no negative consequences resulted for Aeran. Accordingly, the court found that this act was not fraudulent.

We hold that the superior court had tenable grounds and reasons for finding that Aeran had failed to prove fraud, misrepresentation, or misconduct by clear and convincing evidence. Accordingly, the superior court did not err when it denied Aeran's motion to vacate under this subsection.

C.     *CR 60(b)(11): Extraordinary Circumstances*

Aeran next argues that the superior court erred by denying her motion to vacate under CR 60(b)(11). We disagree.

CR 60(b)(11) permits vacating a judgment for "[a]ny other reason justifying relief." But this rule is not a blanket provision authorizing relief from judgment for all conceivable reasons. *State v. Keller*, 32 Wn. App. 135, 141, 647 P.2d 35 (1982). Instead, the rule is confined to "'situations involving extraordinary circumstances not covered by any other section'" of CR 60(b). *In re Marriage of Flannagan*, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985) (quoting *Keller*, 32 Wn. App. at 140). This court applies CR 60(b)(11) only "to serve the ends of justice in extreme, unexpected situations." *In re Det. of Ward*, 125 Wn. App. 374, 379, 104 P.3d 751 (2005). These situations must relate to irregularities extraneous to the court's action or questions concerning the regularity of the court's proceedings. *In re Marriage of Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985).

7

Aeran's brief combines argument regarding CR 60(b)(4) and (11), so it is unclear precisely which extraordinary circumstances she argues are present. Her argument appears to focus exclusively on fraud and misrepresentation. But because CR 60(b)(11) includes only those circumstances "'not covered by any other section of the rule,'" any fraud, misrepresentation, and misconduct cannot be a basis to vacate under this section, because CR60(b)(4) covers them. *Flannagan*, 42 Wn. App. at 221 (quoting *Keller*, 32 Wn. App. at 140). Aeran provides no other reasons for vacating the orders; accordingly, her argument fails.

## II. DUE PROCESS

Aeran further argues that her due process rights were violated. We decline to consider this argument.

RAP 2.5(a) provides that an appellate court will not consider an issue on appeal which was not argued to the trial court. However, RAP 2.5(a)(3) permits a party to raise a claim of "manifest error affecting a constitutional right" for the first time on appeal. The error must be both (1) manifest and (2) truly of constitutional magnitude. *In re Custody of T.L.*, 165 Wn. App. 268, 279, 268 P.3d 963 (2011). A claim is manifest if the facts in the record show that the constitutional error prejudiced the party claiming error. *T.L.*, 165 Wn. App. at 279.

Aeran's due process argument was not preserved for appeal. Aeran raises this claim for the first time on appeal. Aeran appears to concede that this argument was not raised below.[7] She makes a passing reference to the fact that a manifest constitutional error may be raised for the

---

[7] The record below, including Aeran's initial motion to vacate, includes passing references to due process. However, she never argued the issue.

first time on appeal, but she neither clearly identifies how her due process rights were violated, nor makes any argument about why this error is manifest. Accordingly, we decline to review this argument.[8] RAP 2.5(a).

## ATTORNEY FEES

RAP 18.1(a) allows an award of attorney fees to a party entitled to them under "applicable law." In cases governed by chapter 26.09 RCW, we have discretion to grant attorney fees on appeal. RCW 26.09.140. We consider the financial resources of the parties and the arguable merit of the issues on appeal. *In re Marriage of C.M.C.*, 87 Wn. App. 84, 89, 940 P.2d 669 (1997). A party must file a financial declaration with us at least 10 days before oral argument for his or her financial resources to be considered. RAP 18.1(c).

Aeran requests reasonable attorney fees and costs on appeal, citing RCW 26.09.140. She did not file a financial declaration. Therefore, she is not entitled to attorney fees. RCW 26.09.140; RAP 18.1(c).[9]

---

[8] Moreover, a due process claim requires a person to identify a state action that deprived him or her of a constitutionally protected interest in liberty or property. *Bang Nguyen v. Dep't of Health Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 522-23, 29 P.3d 689 (2001). Aeran argues that *Richard* deprived her of her due process rights.

[9] Aeran also assigns error to the superior court's denial of attorney fees for Richard's intransigence, but fails to present any argument supporting her challenge. Therefore, we do not address the issue. RAP 10.3(a)(6); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Richard requests attorney fees under RAP 18.9 for defending a frivolous appeal.[10] Although we disagree with Aeran's arguments, we hold that Aeran's appeal is not so devoid of merit as to be frivolous. Thus, we decline Richard's request for attorney fees under RAP 18.9.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Johanson, J.

Lee, J.

---

[10] Richard's brief also quotes RCW 26.09.140, but he does not argue that he is entitled to reasonable attorney fees under that section. His argument exclusively relates to frivolous appeals.